**CONLEY MOTOR EXPRESS, INC., a corporation, Appellee,**

**v.**

**Harry M. RUSSELL et al., Appellants.**

**No. 73–1934.**

United States Court of Appeals, Third Circuit.

Argued May 28, 1974.

Decided July 2, 1974.

Samuel J. Pasquarelli, Pittsburgh, Pa., for appellee.

Paul D. Boas, James H. Logan, Pittsburgh Pa., for appellants.

Before ROSENN and HUNTER, Circuit Judges, and HANNUM, District Judge.

## OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

This is an appeal from a preliminary injunction enjoining appellants and all those acting in concert with appellants from picketing appellee's place of business.

Since this appeal involves only a review of a preliminary injunction, the narrow question before us is whether the grant of the injunction by the district court was an abuse of discretion. United States Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046, 1048 (3d Cir. 1970).

Appellants are owner-operators of trucks which they lease to Conley Motor Express, appellee. Conley is a trucking concern engaged in the transportation of goods, mainly steel, in interstate commerce. The steel companies pay Conley a certain rate for hauling the steel. Conley in turn pays a certain percentage of this to appellants for the use of their trucks and their services as operators.

For several years the Fraternal Association of Special Haulers ("FASH") has been seeking recognition as collective bargaining agent for appellants. In 1970 this Court upheld a preliminary injunction enjoining picketing by FASH and owner-operator members of FASH. We held that FASH had failed to meet its burden of showing that it was a labor organization immunized from the

anti-trust laws. United States Steel Corp. v. Fraternal Ass'n of Steelhaulers, 431 F.2d 1046 (3d Cir. 1970).

On two occasions, once in 1971 and once in 1973 (during the pendency of the district court proceedings [1]), the National Labor Relations Board ("NLRB") has rejected petitions by FASH for "certification of representative" under section 9(c) of the National Labor Relations Act, 29 U.S.C. § 159. On both occasions the NLRB held that appellants were independent contractors and not employees.

Thwarted by the decision of this Court in 1970 and by the decisions of the NLRB, appellants, with the assistance and aid of FASH, began picketing Conley's place of business on July 23, 1973 for the purpose of obtaining recognition of FASH as appellants' collective bargaining agent and of obtaining a more favorable financial arrangement between Conley and appellants.[2] Although the officers of FASH who had been organizing the picketing were included within the scope of the injunction, neither FASH nor its officers have chosen to appeal the district court's order.

Initially, we note that appellants do not question that Conley would have sustained irreparable injury in the absence of preliminary relief. Moreover, appellants do not dispute that their picketing is properly enjoinable as an illegal combination in restraint of trade, if such activity does not fall within the labor exemption to the anti-trust laws. Thus, if the district court was justified in believing that Conley had shown a reasonable probability of success at final hearing, the preliminary injunction must be affirmed. Only a clear abuse of discre-

1. The district court delayed its decision until the NLRB rendered its ruling on the independent contractor status of appellants. Cf. International Association of Heat & Frost Insulators & Asbestos Workers v. United Contractors Association, Inc., 483 F.2d 384 (3d Cir. 1973).

2. Appellants' counsel at oral argument suggested that even though the NLRB decisions have effectively prevented appellants from using NLRB procedures to force Conley to recognize FASH, appellants may nonetheless attempt to achieve the same result through other channels, e. g., through picketing Conley's place of business.

tion will justify appellate reversal. *United States Steel, supra.*

Appellants essentially argue that unlike the situation confronting this Court in 1970, FASH is now a "labor organization" under the National Labor Relations Act, and appellants, notwithstanding their independent contractor status, are seeking traditional labor objectives. Thus, they argue they should be exempt from the anti-trust laws. We disagree.

Even assuming arguendo that FASH is a "labor organization" and appellants are seeking traditional labor objectives, appellants have nonetheless not shown the primary prerequisite for exemption from the anti-trust laws, i. e., that their dispute with Conley involves an employer-employee relationship.

■ It is well settled that the provisions of the Sherman, Clayton and Norris-LaGuardia Acts must be considered together in determining the scope of the exemption of labor activities from the anti-trust provisions. *E. g.,* United States v. Hutcheson, 312 U.S. 219, 61 S. Ct. 463, 85 L.Ed. 788 (1941); Allen Bradley Co. v. Local Union, 325 U.S. 797, 65 S.Ct. 1533, 89 L.Ed. 1939 (1945).

Section 20 of the Clayton Act, 29 U. S.C. § 52 provides that no restraining order or injunction shall be granted by any federal court,

> "in any case between an employer and employees, or between employers and employees, or between employees, or between persons employed and persons seeking employment, involving, or growing out of, a dispute concerning terms or conditions of employment. . . ."

The statute, however, does not define "a dispute concerning terms or conditions of employment."

Section 1 of the Norris-LaGuardia Act, 29 U.S.C.A. § 101, divests federal courts of jurisdiction to issue an injunction "in a case involving or growing out of a labor dispute. . . ." Section 13 of the Norris-LaGuardia Act, 29 U. S.C. § 113(c) provides:

> "The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

■ Congress enacted the Norris-LaGuardia Act to define the congressional conception of a "labor dispute" in terms that "no longer leave room for doubt." United States v. Hutcheson, 312 U.S. at 234, 61 S.Ct. at 467. As the Supreme Court stated in Columbia River Packers Ass'n v. Hinton:

> "This definition [of 'labor dispute' in 29 U.S.C. § 113(c)] and the stated public policy of the Act—aid to 'the individual unorganized worker . . . commonly helpless . . . to obtain acceptable terms and conditions of employment' and protection of the worker 'from the interference, restraint, or coercion of employers of labor' 29 U.S.C.A. § 102—make it clear that *the attention of Congress was focused upon disputes affecting the employer-employee relationship. . . .*
>
> "We recognize that by the terms of the statute there may be a 'labor dispute' where the disputants do not stand in the proximate relation of employer and employee. But the statutory classification, however broad, of parties and circumstances to which a 'labor dispute' may relate *does not expand the application of the Act to include controversies upon which the employer-employee relationship has no bearing.* Our decisions in New Negro Alliance v. Grocery Co., 303 U.S. 552, [58 S.Ct. 703, 82 L.Ed. 1012] and Milk Wagon Drivers' Union v. Lake Valley Co., 311 U.S. 91, [61 S.Ct. 122, 85 L.Ed. 63] give no support to the respondents' contrary contention, for in both cases the employer-employee relationship was the *matrix of the controversy.*" [Footnotes deleted. Emphasis added.]

315 U.S. 143, 145–147, 62 S.Ct. 520, 521, 86 L.Ed. 750 (1942). *See* Taylor v. Local 7, International Union of Journeymen, Horseshoers, 353 F.2d 593 (4th Cir. 1965), cert. denied, 384 U.S. 969, 86 S.Ct. 1859, 16 L.Ed.2d 681 (1966).

Regardless of how appellants may seek to characterize their objectives in picketing, appellants have failed to show that the employer-employee relationship forms the matrix of their controversy with Conley. Therefore, we are satisfied.that the district court did not abuse its discretion in granting the preliminary injunction.

The judgment of the district court will be affirmed.